Jerald E. BLOOM, Plaintiff,

v.

CONSOLIDATED RAIL CORPORATION, Defendant.

Civ. A. No. 89–7452.

United States District Court, E.D. Pennsylvania.

Feb. 4, 1993.

Lawrence A. Katz, Patrick T. Henigan, Mitchell A. Kaye, Robert E. Myers, Coffey & Kaye, Bala Cynwyd, PA, for plaintiff.

Jonathan F. Altman, Thomas J. Wamser, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

SMITH, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff, Jerald E. Bloom, brought this action against his former employer, Consolidated Rail Corporation [1] ("Conrail"), pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, for his psychiatric injuries that arose after the train he was driving struck and killed a pedestrian. Plaintiff claims that Conrail is liable under FELA because his injuries resulted from the manner in which a Conrail patrolman treated him after the incident and because Conrail failed to provide plaintiff with psychiatric treatment after prior incidents.

This case was assigned to the Honorable William H. Yohn, Jr., however, the parties have consented to trial before me. Presently before this Court is Defendant Conrail's Motion for Summary Judgment. For the following reasons, Conrail's Motion will be denied.

### II. FACTUAL BACKGROUND

Viewing the facts in favor of Plaintiff, I accept the following for purposes of this Motion: Plaintiff had been employed by the railroad in engine service since 1956 and became an engineer in 1966 or 1967. During his career, Plaintiff was involved with four incidents where people were killed when they or their automobiles were struck by Plaintiff's locomotives. This action concerns mainly the fourth and final incident, but I will briefly describe the other three. It appears that the first occurred in the 1960s when a woman intentionally parked her car on the tracks with herself and her five children in the car. They were all

---

**1.** Plaintiff was disqualified from work at Conrail for psychiatric reasons in 1988 and received disability.

killed when Plaintiff's freight train hit them.

The date of the next incident is not in the record, but a man parked his car on the tracks and was killed on impact with Plaintiff's train. It was determined that this man had also committed suicide. The third incident occurred in the spring of 1986, when Plaintiff's train again hit and killed a man in his car. In each of these incidents, Plaintiff was not at fault because he could not have stopped his train prior to the impacts. Nonetheless, he was shaken by these incidents and said that he requested help to cope with them. No counselling or psychiatric treatment was offered, nor did Plaintiff seek any such treatment on his own.

The final incident, the one most pertinent to this case, occurred on October 28, 1986. At approximately 2:30 p.m., Plaintiff was operating a Conrail train between Conway, Pennsylvania and Altoona, Pennsylvania. As the train was travelling westbound through Ambridge, Pennsylvania, it struck and killed Mr. Robert W. Compton. Mr. Compton, a pedestrian, intentionally stood on the track in front of the train to commit suicide.

When Plaintiff saw Mr. Compton step onto the tracks, he began blowing the horn and ringing the bell on the train and he and the other two men in the engine, Mr. Bucco and Mr. Finnefrock, started to yell to Mr. Compton. Mr. Compton never responded to any of these calls and it was impossible for Plaintiff to stop the train in time.

After the impact, Plaintiff was still trying to stop the train and he began to feel faint, lightheaded and nauseous. He hit his head on the electrical cabinet of the engine as a result. Plaintiff described his condition as follows:

> I was sicker than a dog. I couldn't sit in the engineer's seat. It felt so hot that I couldn't sit in it at all. I never got back in the seat again after that ... It just shook the hell out of me. (Bloom Depo. p. 49).

Shortly after the impact, a Conrail patrolman boarded the engine to investigate the incident. He told Plaintiff he needed a witness to show him what part of the train struck Mr. Compton. Plaintiff protested and said that he was not going out because he did not feel well. At this point the Conrail patrolman grabbed Plaintiff, pushed him toward the door, and told him he had to go out because he had to have a witness. Then Plaintiff exited the train with the patrolman. When they came to the front of the train, Plaintiff described what the patrolman did to him and what he saw:

> ... and so he pushed me towards the front there, and he says, That's it, and then I saw the brains on the drawhead and he saw it about the same time, and he pushed me a little and I saw the hair on the air hose. (Bloom Depo. p. 145).

Immediately afterwards, Plaintiff vomited and then returned to the engine. The patrolman had already left the scene.

Plaintiff has undergone psychiatric treatment since the day after the October 1986 incident. One psychiatrist, Dr. Richard B. Saul, is of the opinion that Plaintiff is completely disabled from any employment due to his Chronic Post–Traumatic Stress Disorder. Dr. Saul feels that Plaintiff's disorder was set in motion by the actions of the Conrail patrolman and by Conrail's failure to provide Plaintiff with psychiatric treatment after the three previous incidents causing death to others.

## III. STANDARD OF REVIEW

Under Fed.R.Civ.P. Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A fact is "material" if the outcome of the suit might be affected under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Additionally, a dispute qualifies as "genuine" only if a reasonable jury could return a verdict for the non-moving party. *Id.*, at 249, 106 S.Ct. at 2510.

The initial burden is on the moving party to establish the absence of genuine issues of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). This burden on the moving party may be satisfied by demonstrating "... an absence of evidence to support the non-moving party's case." *Id.* at 323, 106 S.Ct. at 25. If this burden is sustained, the burden shifts to the non-moving party to set forth the existence of a genuine issue of material fact for trial. *Anderson* 477 U.S. at 255, 106 S.Ct. at 2553. To determine the existence of genuine issues of material fact, I must accept the evidence of the non-moving party as true and resolve all reasonable inferences arising from the evidence in favor the non-moving party. *See, id.; see also, Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir.1978).

## IV. DISCUSSION

 Before even addressing the merits of Defendant Conrail's Motion, I will address Plaintiff's contention that the Motion should be denied under the doctrine of the law of the case. Plaintiff states that Defendant filed the same Summary Judgment Motion in December 1990 when the case was before the Honorable Ronald L. Buckwalter and Judge Buckwalter denied that Motion. Therefore, Plaintiff contends, this Court should not reexamine those issues in the present Motion. First and foremost, the law of the case doctrine "directs a court's discretion, it does not limit the tribunal's power." *Schultz v. Onan Corp.*, 737 F.2d 339 (3d Cir.1984), *citing, Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). Second, Judge Buckwalter denied Defendant's Motion for Summary Judgment without a supporting opinion. As the case will be before me for trial and as I am unable to discern the reason for his denial, I am exercising my discretion and have decided to address the merits of Defendant's Motion.

Under the FELA, an employer is liable for injury to its employees caused in whole or in part by its negligence. *Pehowic v. Erie L.R. Co.*, 430 F.2d 697, 699 (3d Cir.

1970); 45 U.S.C. § 51. The Supreme Court has stated:

> Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that *employer negligence played any part, even the slightest, in producing the injury or death* for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence.

*Rogers v. Missouri P.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957) (emphasis added). As further clarification, the Third Circuit has held that the "trial court is justified in withdrawing ... issues from the jury's consideration only in those extremely rare instances where there is a *zero probability* either of employer negligence or that any such negligence contributed to the injury of an employee." *Pehowic*, 430 F.2d at 699–700 (emphasis added).

 Nonetheless, the FELA does not make an employer an insurer of an employee's safety. *Inman v. Baltimore & O.R. Co.*, 361 U.S. 138, 140, 80 S.Ct. 242, 243, 4 L.Ed.2d 198 (1959); *Ellis v. Union P.R. Co.*, 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. 572 (1947). The basis of an employer's liability is its negligence, not the fact that injuries occur. *Ellis*, 329 U.S. at 653, 67 S.Ct. at 600. As negligence requires a breach of a duty, the employer's duty under the FELA is to provide its employees with a reasonably safe workplace. *Shenker v. Baltimore & O.R. Co.*, 374 U.S. 1, 7, 83 S.Ct. 1667, 1671, 10 L.Ed.2d 709 (1963); *Pehowic*, 430 F.2d at 699.

Defendant argues that its Motion for Summary Judgment should be granted because Plaintiff has no cause of action against it under the FELA. More specifically, Defendant asserts that Plaintiff is unable to prove any negligence on the part of Conrail for Mr. Compton's suicide, for the patrolman's actions and for providing Plaintiff with medical care. I will address each of these three claims.

Defendant's first claim is irrelevant to this action because Plaintiff is not attempting to prove that his injuries were the result of Conrail negligence in causing Mr. Compton's suicide. Plaintiff admitted this fact in his Brief in Opposition to Defendant's Motion [2] and stated that Defendant did not understand the nature of Plaintiff's claims. Plaintiff is claiming that his injuries were caused by the patrolman's actions and Conrail's failure to provide medical treatment. Therefore, Defendant's first claim will be dismissed and not considered.

■ Second, Defendant argues that the patrolman's actions were reasonable and therefore, it is entitled to summary judgment. I disagree. It is now well-settled that the FELA has been construed to cover some intentional torts even though its text only mentions negligence. *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 562 n. 8, 107 S.Ct. 1410, 1414 n. 8, 94 L.Ed.2d 563 (1987) (and cases cited therein). It seems that the most common of these actionable intentional torts has been assault. *Jamison v. Encarnacion*, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082 (1930); *Lancaster v. Norfolk & W.R. Co.*, 773 F.2d 807 (1985), *cert. denied*, 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987); *Brooks v. Washington Terminal Co.*, 593 F.2d 1285 (C.A.D.C. 1979), *cert. denied*, 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275 (1979). In addition, railroad workers are able to sue their employers for injuries arising out of intentional torts committed by fellow employees as long as the tort was committed in the course of the discharge of the fellow employee's duties and in furtherance of the employer's objectives. *Lancaster*, 773 F.2d at 818; *see also, Jamison*, 281 U.S. at 641, 50 S.Ct. at 442.

■ Plaintiff contends that he was assaulted by the Conrail patrolman and the patrolman's actions caused in part his emotional and psychiatric injuries. Therefore, Plaintiff's claim as stated against the patrolman is actionable under the FELA. Al-

though Defendant argues that the patrolman's actions were reasonable, thereby defeating this claim under the FELA, the reasonableness of a person's actions is a question of fact for the jury. As such, Defendant's second claim must be denied.

Third and finally, Defendant asserts that Plaintiff was provided with adequate medical care, despite the fact that Plaintiff claims Conrail was negligent in failing to provide it. There is no question that Defendant provided Plaintiff with the opportunity to seek medical treatment because of the existence of the health plan provided by his union, the Brotherhood of Locomotive Engineers, and Conrail. In addition, there is no dispute that Plaintiff began seeking his own psychiatric treatment after the incident with Mr. Compton's suicide.

■ The question remains, however, whether Conrail's duty to provide a reasonably safe workplace would require Conrail to do more because of the frequency of train-impact deaths, such as providing Plaintiff with counselling and treatment after his earlier impacts. Plaintiff's doctor, Dr. Saul, believes that Conrail's failure to engage Plaintiff in therapy after the earlier fatalities contributed to Plaintiff's present injuries. In other words, I am faced with the question of whether Conrail acted reasonably in the circumstances of this case. Again, reasonableness is a question of fact for the jury. Therefore, Defendant's Motion must be denied.

---

2. Actually, this admission was stated in Plaintiff's Memorandum of Law filed in January 1991, in opposition to Defendant's first Motion for Summary Judgment filed before Judge Buckwalter. That memorandum was incorporated into Plaintiff's response memorandum for the present Motion for Summary Judgment.