No. 13295

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

STATE OF MONTANA ex rel
BURLINGTON NORTHERN INC.,

Relator,

-vs-

THE DISTRICT COURT OF THE EIGHTH
JUDICIAL DISTRICT OF THE STATE OF
MONTANA, IN AND FOR THE COUNTY OF
CASCADE, THE HON. NAT ALLEN, JUDGE
PRESIDING,

Respondents:

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Gough, Booth, Shanahan and Johnson, Helena,
Montana
Cordell Johnson argued, Helena, Montana

For Respondents:

Hoyt and Bottomly, Great Falls, Montana
John Hoyt argued, Great Falls, Montana

---

Submitted: March 17, 1976

Decided: APR 1 4 1976

Filed: APR 1 4 1976

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an original proceeding. Relator Burlington Northern, Inc., petitioned this Court for a writ of supervisory control or other appropriate order. Ex parte presentation on March 4, 1976, was followed by an order of this Court for an adversary hearing on March 17, 1976. Briefs were submitted, the matter argued and taken under advisement by the Court.

This matter involves a Federal Employers' Liability Act (FELA) case which was before this Court previously (McGee v. Burlington Northern, Inc., _____Mont._____, 540 P.2d 298, 32 St.Rep. 847). In that case relator appealed a jury verdict in the amount of $525,000 against relator to this Court. Following the jury verdict and judgment, relator railroad company failed to post a supersedeas bond within the period provided by the rules of appellate civil procedure and McGee levied on approximately $170,000 of the relator's assets before such bond was posted.

This Court, on appeal, vacated and set aside the judgment and ordered a new trial on the issue of damages. Following denial of a rehearing on September 13, 1975, relator filed a motion on September 18, 1975, for an order requiring an accounting of funds levied on by McGee after the jury verdict and judgment and asked for an order for restitution of such funds and for costs on appeal.

Following the decision of this Court, McGee filed a petition for a writ of certiorari in the United States Supreme Court. The trial court ordered that McGee would not have to file briefs on the accounting and restitution or cost questions until 30 days after a ruling by the United States Supreme Court on the writ of certiorari in that Court.

On January 19, 1976, the Supreme Court of the United States denied the petition for a writ of certiorari.

The trial judge, Judge Allen, on January 27, 1976, set the case for trial on April 27, 1976. McGee then filed an amended complaint alleging the violation of the Federal Safety Appliance Act, which had been in the original complaint but which the original trial judge had deemed it not necessary to rule upon, and in addition alleged willful and wanton conduct by relator railroad company as a basis for punitive damages.

Relator railroad company filed consolidated motions directed at the amended complaint and renewed its previous motion for an accounting and an order requiring restitution of the funds McGee executed on following the judgment at the end of the first trial.

The trial judge denied relator's consolidated motions and relator instituted this proceeding under Rule 7 and Rule 17, Rules of Appellate Civil Procedure, asking this Court to exercise supervisory control over the district court in the case. This Court is requested to exercise control over three matters:

(1) Whether relator is entitled to restitution of funds taken by McGee on executions, where the district court judgment upon which the executions were based was set aside and vacated on appeal.

(2) Whether punitive damages can be considered for any purpose in an FELA case.

(3) Whether those portions of McGee's amended complaint which do not comply with the provisions of Rule 8, M.R.Civ.P., should be ordered stricken.

We will first consider issues (1) and (3). These issues are premature at this stage of the proceedings. Issue (1), the restitution of funds. We note that at the time of the first trial McGee received a verdict in the amount of $525,000 for serious injuries received. While that judgment was reversed, the matter was returned for retrial on the question of damages. Because of

- 3 -

relator's failure to post a supersedeas bond, certain assets were levied upon and this Court finds no error on the part of the trial court in not granting relator's motion for an accounting at this stage of the case. Relator cites and argues Anderson v. Border, 87 Mont. 4, 285 P. 174, as controlling on the restitution of monies levied upon by McGee. We do not find Anderson controlling for in that case there was a final judgment from which no further appeal was taken. Here, the case is about to be retried. For this Court to now call for an accounting and restitution would not only interfere with the trial court's handling of the case, but would cause additional delay in a case that has been set for retrial on April 27, 1976.

Issue (3) is directed at the amended complaint. We will not interfere at this pretrial stage of the proceedings with the trial court's decision to allow the amended complaint to stand. While we agree that one of the purposes of the Montana Rules of Civil Procedure is to provide simple, concise and direct pleadings, we do not find an abuse of discretion by the trial judge in not granting relator's motion to strike McGee's amended complaint. As previously noted, the amended complaint reinstated a count covering violation of the Federal Safety Appliance Act (45 U.S.C. § 1 et seq.). Federal cases construe this Act as an amendment to and a part of FELA (45 U.S.C.§51 et seq.) and the two acts should be read and applied together. We find that punitive damages are not proper for a violation of this Act. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L ed 1282, 11 ALR2d 252; Chicago & N.W.Ry.Co. v. Chicago, R.I. & P.R.Co., 179 F.Supp. 33, aff'd 280 F.2d 110, cert.den. 364 U.S. 931; International-G.N.Ry.Co. v. United States, 268 F.2d 409; Holfester v. Long Island Railroad Co., 360 F.2d 369; Underwood v. Missouri-Kansas-Texas Railroad Co., 191 Kan. 338, 381 P.2d 510; Atlantic Coast Line R.Co. v. Moore, 135 Fla. 485, 186 So. 210.

The remaining issue, issue (2), that of allowing McGee to plead punitive damages in his amended complaint, was error on the part of the trial court. The Federal Employers' Liability Act is as its name implies, a federal act, and when applicable is the exclusive remedy against the railroads for injuries to their employees. Metropolitan Coal Company v. Johnson, 265 F.2d 173. Any suits for injuries under the Act and rights to recover must be predicated on negligence. Herdman v. Penn.R.Co., 228 F.2d 902, 352 U.S. 518, 77 S.Ct. 455, 1 L ed 2d 508.

While the FELA provides that suits may be filed in either federal or state courts, there can be no question that the rights created by the Act are governed by the decisions of the federal courts. Bowman v. Illinois Central Railroad Co., 11 Ill.2d 186, 142 N.E.2d 104, cert.den. 355 U.S. 837, 78 S.Ct.63, 2 L ed 2d 49. With the enactment of FELA, Congress took over the field of employers' liability to employees in interstate transportation by rail, and all state laws upon the subject were superseded. The rights and obligations of an employee and the employer depend on the FELA as construed by the federal courts. This Court recognized this principle in Resner v. N.P.Ry.Co., 161 Mont. 177, 505 P.2d 86. See also Davee v. Southern Pacific Company, 25 Cal.Rptr. 445, 375 P.2d 293; Dow v. Carnegie-Illinois Steel Corporation, 165 F. 2d 777.

Therefore, for guidance on whether punitive damages are an element of damages to be considered in FELA cases, we look to the federal jurisdiction. We note here, that though FELA has been in existence nearly 70 years, the question of punitive damages has never been considered and passed on by the United States Supreme Court. The highest court to consider the question was the Sixth Circuit in 1971, when it overturned a ruling of a federal District Court, and ruled that punitive damages are not to be considered. In Kozar v. Chesapeake and Ohio Railway Company, 449 F.2d 1238, 1240, 1242, the Court said:

- 5 -

"Punitive Damages

"Since we hold that punitive damages are not recoverable under the Federal Employers' Liability Act, no purpose would be served by setting forth the facts upon which the appellee relies to support the $70,000 award.

"There are two basic reasons advanced in the 'Omnibus Opinion' of the District Court for submitting to the jury, under the usual instructions, the issue of punitive damages. First, it is argued that the legislative history of the Act indicates that it was not its purpose to limit or take away any 'remedy' available at common law and at common law punitive damages were available. Second, permitting the recovery of punitive damages advances the objective of the Act to '[place] such stringent liability upon the railroads for injuries to their employees as to compel the highest safeguarding of the lives and limbs of men in this dangerous employment.' We conclude that neither reason is a sound basis for accepting an interpretation of the Act that would permit the unprecedented recovery of punitive damages.

"Admittedly, the legislative history of the Act shows that its provisions were not to limit or take away any 'remedy' available at common law to an injured employee. But it is a mistake to characterize the right to recover punitive damages at common law a 'common law remedy'. There is an important distinction between a 'remedy' which Bouvier's Law Dictionary defines as 'the means employed to enforce a right or redress an injury', and 'damages' which are defined as '[t]he indemnity recoverable by a person who has sustained an injury * * * and the term includes not only compensatory, but also exemplary or punitive or vindictive * * * damages.' Damages are simply a measure of injury, and to say that at common law there was 'punitive damages as a right of action' or there was available 'the common law remedy action of punitive damages' or a 'punitive damages remedy' is a misuse of the legal terminology. Thus, when the legislative history of the Act is examined and shows that Congress never intended the Act as a restriction on the remedies available to an injured employee, it is not referring to a damages theory. Moreover, the cases cited by the District Court as examples of early common law cases permitting recovery of punitive damages are distinguishable from the case of a railroad employee or an employee's administrator suing his employer for injuries or death suffered on the job. Most of the cases relied upon by the District Court are cases of intentional torts.

"The District Court, in its 'Omnibus Opinion', correctly set forth the humanitarian and beneficient reasons for the adoption of the Federal Employers' Liability Act by Congress. However, no matter how persuasive this policy argument may be, it cannot stand as the law in light of the clear, unambiguous statements in the line of Supreme Court authorities holding that damages recoverable under the Act are compensatory only.

"In Gulf, Colorado and Santa Fe Railway Company v. McGinnis, 228 U.S. 173, 175-176, 33 S.Ct. 426,427, 57 L.Ed. 785 (1913), it is stated:

"'In a series of cases lately decided by this court, the act in this aspect has been construed as intended only to compensate the surviving relatives of such a deceased employe for the actual pecuniary loss resulting to the particular person or persons for whose benefit an action is given. The recovery must therefore be limited to compensating those relatives for whose benefit the administrator sues as are shown to have sustained some pecuniary loss. Michigan Central Railroad v. Vreeland, 227 U.S.59, [33 S.Ct. 192, 57 L.Ed. 417]; American Railroad [Co. of Porto Rico] v. Didricksen, 227 U.S. 145, 33 S.Ct. 224, 57 L.Ed. 456]. In the last cited case, speaking of the Employers' Liability Act, we said (p.149, [33 S.Ct. p. 225]): "The cause of action which was created in behalf of the injured employé did not survive his death, nor pass to his representatives. But the act, in case of the death of such an employé from his injury, creates a new and distinct right of action for the benefit of the dependent relatives named in the statute. The damages recoverable are limited to such loss as re-sults to them because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employé. The damage is limited strictly to the financial loss thus sustained."

"'The statutory action of an administrator is not for the equal benefit of each of the surviving relatives for whose benefit the suit is brought. Though the judgment may be for a gross amount, the interest of each beneficiary must be measured by his or her individual pecuniary loss. That apportionment is for the jury to return. This will, of course, exclude any recovery in behalf of such as show no pecuniary loss.' * * *

"In Michigan Central Railroad Company v. Vreeland, 227 U.S. 59, 68-69, 33 S.Ct. 192,195, 57 L.Ed. 417 (1913), in commenting upon the type of action created by the Federal Employers' Liability Act and the damages recoverable, the following unequivocal statements are made:

"'It is a liability for the loss and damage sustained by relatives dependent upon the decedent. It is therefore a liability for the pecuniary damage resulting to them, and for that only. * * *'"

McGee cites and argues a number of cases decided before Kozar: Petition of Den Norske Amerikalinje, 276 F.Supp. 163; Gunnip v. Warner Co., 43 F.R.D. 365, 10 ALR Fed 528; Phillip v. United States Lines Co., 240 F.Supp. 992; Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L ed 1282. Particular reliance is placed in the case of United States Steel Corporation v. Fuhrman, 407 F.2d 1143, 10 ALR Fed 500, cert.den. 398 U.S. 958, 90 S.Ct. 2162, 26 L ed 2d 542.

These same arguments were made with no avail to the Sixth Circuit in <u>Kozar</u>, where the Court held:

> "We do not believe that United States Steel Corporation v. Fuhrman, 407 F.2d 1143 (6th Cir. 1969), which reversed the District Court in Petition of Den Norske Amerikalinje A/S, 276 F.Supp. 163 (N.D. Ohio, 1967), requires a different result from the conclusion that punitive damages are not recoverable under FELA. <u>Den Norske</u> did hold that punitive damages were recoverable from a tortfeasor in an admiralty proceeding and volunteered the statement that Section 59 of FELA permitted a deceased railroader to sue for punitive damages. However, the Mississippi case of Ennis v. Yazoo & M.V. Ry., 118 Miss. 509, 79 So. 73 (1918), cited by the District Court as allowing punitive damages was a state wrongful death action controlled by state law, and actually by way of negative inference the opinion of the Mississippi court recognizes that compensatory damages are the 'measure of damages * * * recoverable under the Federal Employers' Liability Act.' Also, the statement in the opinion of the District Court that Section 59 of the Act added by the Amendment of 1910 permits recovery of punitive damages is refuted in St. Louis I.M. & S.R. Company v. Craft, 237 U.S. 648,658, 35 S.Ct. 704, 706, 59 L.Ed. 1160 (1915).

> "'On the contrary, it [§ 59] means that the right existing in the injured person at his death--a right covering his loss and suffering while he lived, but taking no account of his premature death or of what he would have earned or accomplished in the natural span of life--shall survive to his personal representative to the end that it may be enforced and the proceeds paid to the relatives indicated. And when this provision and § 1 are read together the conclusion is unavoidable that the personal representative is to recover on behalf of the designated beneficiaries, not only such damages as will compensate them for their own <u>pecuniary</u> loss, but also such damages as will be reasonably <u>compensatory</u> for the loss and suffering of the injured person while he lived.' (Emphasis added).

> "<u>Den Norske</u> was reversed by this Court in <u>Fuhrman</u> on the grounds that the findings of fact upon which the District Court relied to make the award of punitive damages were clearly erroneous, and any inference that may be extracted from the reading of <u>Fuhrman</u> that punitive damages may be recoverable in an admiralty proceeding cannot be regarded as controlling in this case."

For the foregoing reasons we hold that punitive damages cannot be considered in an FELA case.

This opinion shall constitute a writ of supervisory control for the guidance of the trial court.

_John Conway Harrison_
Justice

We Concur:

_Wesley Castles_

_Frank I. Haswell_

Justices.

_Jack D. Shanstrom_

Hon. Jack Shanstrom, District Judge,
sitting for Chief Justice Harrison.

Mr. Justice Gene B. Daly specially concurring in part and dissenting in part:

I concur with the majority except as to the rationale submitted to support its holding on issue (2), punitive damages. We may be bound by the decisions of the highest federal court, however, I do not find the rationale in <u>Kozar</u> particularly persuasive.

<em>Gene B. Daly</em>

Justice.